97 P.3d 47 (2004)
STATE of Washington, Respondent,
v.
Debora Lynn FREDRICK, Appellant.
No. 30605-1-II.
Court of Appeals of Washington, Division 2.
September 8, 2004.
*48 Donna Yumiko Masumoto, Attorney at Law, Pierce Co. Prosc. Atty. Office, Tacoma, WA, for Respondent.
Linda J. King, Attorney at Law, Tacoma, WA, for Appellant.

PART PUBLISHED OPINION
BRIDGEWATER, J.
Debora Fredrick appeals her bail jumping conviction. We hold that (1) because the knowledge element of bail jumping does not implicate the statutory affirmative defenses to bail jumping, the defenses do not unconstitutionally shift the burden to the defendant; and (2) without an offer of proof of the defendant's testimony, the record is inadequate for us to evaluate the ineffective assistance of counsel claim. We affirm.
Washington State Patrol Trooper Kelly Kalmbach responded to a traffic collision on September 10, 2002. WSP troopers searched Fredrick's car and found drugs, paraphernalia, baggies, and a set of scales. Neither the search nor the drug convictions are contested, thus we do not address them further. Our inquiry concerns the charge of bail jumping based on the sequence of events after Fredrick's arrest.
After Fredrick's arrest, she posted $5,500 bail and the court released her pending trial. On December 23, 2002, Fredrick signed a scheduling order that listed three upcoming court dates, including January 3, 2003 for a rearraignment hearing. Fredrick failed to appear in court on January 3, and the court issued a bench warrant for her arrest. The State charged bail jumping in addition to the other charges  five charges for substantive drug offenses and one for DUI.
At trial, Brian Wasankari, a Pierce County deputy prosecutor, testified regarding Fredrick's failure to appear for the January 3 rearraignment hearing. He explained that the order Fredrick signed, which established conditions of Fredrick's release, contained a paragraph advising her of the consequences if she missed a court date.
The State next introduced the December 23 scheduling order. Wasankari testified that Fredrick signed this document. The order listed the following dates: a January 3 rearraignment date, a January 17 motion date, and a January 21 trial date.
Fredrick presented the testimony of Sherri Adams, her friend. Adams testified that when she went over to Fredrick's house in the early morning of January 4, Fredrick appeared clammy and, when she attempted to stand up, became sick and had to rush to the bathroom. Adams further stated that Fredrick had been sick for at least two days prior to her visit. She testified that when she spoke on the phone with Fredrick, she sounded sick.
After Adams testified, a colloquy occurred between defense counsel and the court. Defense counsel moved in limine to not allow the State to cross-examine Fredrick on any charge except for the bail jumping charge. The court told defense counsel to provide it with some law because the court's understanding was that if Fredrick took the stand, the State could cross-examine her on any of the charges. The court further stated that it did not want to prevent Fredrick from testifying by its preliminary ruling and advised defense counsel to present it with relevant law on the issue. The court then gave defense counsel 20 minutes to research the issue. When court reconvened, defense counsel told the court that its interpretation of the evidence rules was correct. If Fredrick took the stand, it would give the State the opportunity to cross-examine on all other counts.
Deanna Cole, another friend of Fredrick's, also testified that Fredrick was sick on January 4. Cole stated that she accompanied Fredrick a week later when she went to quash the bench warrant. After Cole's testimony, the State called Melanie Tratnik, a rebuttal witness. Tratnik worked for the Pierce County prosecutor's office in the drug unit. She testified that the scheduling order from *49 Fredrick's case showed that as of January 24, a hearing to quash a bench warrant was scheduled for January 30.
Prior to closing argument, the court and the attorneys discussed the jury instructions. The State presented a jury instruction on bail jumping. Fredrick did not object to this instruction. Nor did Fredrick propose an instruction explaining the affirmative defense to the bail jumping instruction.
During closing argument, the State argued that the defense used "red herrings" to divert the jury's attention from the real issue in the case. Report of Proceedings (RP) (May 14, 2003) at 838. Fredrick did not object to the State's argument. In the State's rebuttal argument, the deputy prosecutor commented that the job of defense attorneys is to divert the jury's attention from the evidence. Again, Fredrick did not object to the State's comments. The jury found Fredrick guilty on all seven counts.

I. Bail Jumping Instructions
Fredrick argues that the State was unconstitutionally relieved of its burden to disprove her statutory defense to bail jumping. But, Fredrick did not raise this defense during the trial. Fredrick contends the court should consider this issue because it presents constitutional issues which can be raised for the first time on appeal. RAP 2.5(a)(3). State v. Davis, 60 Wash.App. 813, 822-23, 808 P.2d 167 (1991), aff'd, 119 Wash.2d 657, 835 P.2d 1039 (1992). Fredrick asserts the State was relieved of its burden to disprove the statutory defense to bail jumping because the defense "negates" the knowledge element in the offense of bail jumping. Br. of Appellant at 17. This argument fails, however, because there is no law supporting the contention that the State has to disprove the affirmative defense to bail jumping.
RCW 9A.76.170(1) explains the crime of bail jumping.[1] In RCW 9A.76.170(2), the statute states that where a defendant can prove that uncontrollable circumstances prevented the person from appearing, the defendant has established an affirmative defense to bail jumping. RCW 9A.76.010(4) defines "[u]ncontrollable circumstances" as:
[A]n act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of man such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts.
Fredrick contends she presented sufficient evidence to show uncontrollable circumstances.
At trial, Fredrick presented two defense witnesses that testified they saw her the day after her court date and that she was sick. Fredrick also provided testimony that she called her attorney two days after her scheduled court date. This evidence does not meet the statutory definition of "[u]ncontrollable circumstances." Fredrick presented no evidence that she was in the hospital because she was sick or any other similar barrier to her attendance. Further, the bail jumping statute also requires that the defendant appear or surrender as soon as the circumstances cease to exist. RCW 9A.76.170(2).
A defense witness testified that Fredrick attempted to appear approximately a week after her court date. But, rebuttal testimony by Melanie Tratnik called defense testimony into question. Tratnik cited to the scheduling order, which was dated 20 days after Fredrick's original court date. Fredrick fails to provide substantial evidence to prove the affirmative defense to bail jumping.

II. Affirmative Defense
Fredrick contends that knowledge is an element of the offense of bail jumping and thus the State must prove that element beyond a reasonable doubt. Fredrick argues that requiring her to prove the affirmative defense of uncontrollable circumstances, which negates the knowledge element, is unconstitutional. *50 She is mistaken. We use State v. Lively, 130 Wash.2d 1, 10-11, 921 P.2d 1035 (1996), and its two-tiered test to evaluate whether the State or the defendant has the ultimate burden of proving this defense.
We have twice addressed this issue. In State v. Ball, 97 Wash.App. 534, 536-37, 987 P.2d 632 (1999), we held that, under the older version of the statute, knowledge on the specific date of the hearing was not an element of the crime. Recently, we addressed the knowledge element in the current statute and held that the knowledge requirement is met when the State proves that the defendant has been given notice of the required court dates. State v. Carver, 122 Wash.App. 300, 93 P.3d 947, 950 (2004).
The defense provided in the statute relates to the defendant's inability to attend the date to which she has been previously given notice. Thus, this affirmative defense does not negate the knowledge element of the offense.
Fredrick also claims that under the second test in Lively, the legislature intended that the burden of the defense be placed on the State. This claim fails. First, the statute notes that the defense is an "affirmative defense." RCW 9A.76.170. Second, nothing in the affirmative defense negates the knowledge requirement of the statute. The State must prove that the defendant was given notice and knew of the date. Third, we have held under both the old and new statute that knowledge on the required date is not an element of the offense. Finally, all of the events listed are ones that are peculiarly within the defendant's ability to assert, not the State's. Fredrick's reliance on State v. McCullum, 98 Wash.2d 484, 656 P.2d 1064 (1983), is misplaced and inapposite.

III. Insufficient Evidence
Fredrick asserts there was insufficient evidence to support her bail jumping conviction. We disagree.
In reviewing a sufficiency of the evidence challenge, this court must determine, after viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have convicted the defendant beyond a reasonable doubt. State v. Joy, 121 Wash.2d 333, 338, 851 P.2d 654 (1993) (citing State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980)). When the defendant claims the evidence is insufficient, the defendant admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
Fredrick contends the State failed to prove she "knowingly" failed to appear for court. Br. of Appellant at 27. Jury instruction 29 listed the elements of bail jumping the State had to prove beyond a reasonable doubt. The instruction stated:
To convict the defendant of the crime of bail jumping, as charged in count V, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 3rd day of January, 2003, the defendant knowingly failed to appear before a court;
(2) That the defendant was charged with Unlawful Possession of a Controlled Substance, to wit: methamphetamine and cocaine, class "C" felonies;
(3) That the defendant had been released by court order or admitted to bail with the requirement of a subsequent personal appearance before that court; and
(4) That the acts occurred in the State of Washington.
Clerk's Papers (CP) at 115.
The evidence showed Fredrick knew she had a court date on January 3. She also knew she failed to appear because she called her attorney two days after missing her court date. When considering the evidence in the light most favorable to the State, a rational trier of fact could find that the State proved the "knowledge" element beyond a reasonable doubt.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed *51 for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON, P.J., and ARMSTRONG, J.
NOTES
[1] RCWA 9A.76.170(1) states in part: "Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state ... and who fails to appear ... as required is guilty of bail jumping."