[No. 37585-1-II.   Division Two.   June 23, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. ELIJAH F. JACKSON, *Appellant*.

---

[30] RCW 42.56.550(4); *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 114 Wn.2d 677, 690, 790 P.2d 604 (1990) (*PAWS* I).

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*Deborah S. Kelly, Prosecuting Attorney,* and *Brian P. Wendt, Deputy,* for respondent.

¶1 QUINN-BRINTNALL, J. — Elijah Jackson appeals his convictions and sentence for felony driving while under the influence (DUI), first degree driving while license suspended, and obstructing a law enforcement officer. He argues that the prosecutor committed misconduct and his sentence is erroneous for various reasons. We accept the State's concession that no evidence supported the sentencing court's findings that Jackson was on community custody when he committed the current offenses or that he committed six prior offenses. We affirm Jackson's conviction, vacate his sentence, and remand for resentencing.

## FACTS

¶2 On November 29, 2007, Washington State Patrol Trooper Allen Nelson stopped a car for erratic driving. Nelson later testified that Jackson drove the car, was intoxicated, and acted violently toward Nelson and another officer. At trial, however, Jackson's girl friend, Rose Greene, testified that she drove the car and Jackson was merely sitting in the driver's seat after she had pulled over to vomit. Nelson arrested Jackson, and two other officers later testified that he appeared intoxicated when he was in jail.

¶3 The State charged Jackson with DUI (count I), first degree driving while license suspended (count II), and obstructing a law enforcement officer (count III). The jury found Jackson guilty on all counts. The sentencing court concluded that Jackson's offender score was eight and imposed the maximum term of 60 months of confinement.

¶4 Jackson appeals.

## ANALYSIS

PROSECUTORIAL MISCONDUCT

¶5 Jackson first argues that the prosecutor committed misconduct during closing arguments by (1) vouching for witnesses' credibility, (2) shifting the burden of proof to the defense, (3) commenting on Jackson's invocation of his right to not testify, (4) asking the jury to convict unless it found the State's witness committed perjury, and (5) expressing a personal opinion about the veracity of Greene's testimony. He also argues that the cumulative effect of these errors prejudiced his right to a fair trial. We disagree.

¶6 In order to establish prosecutorial misconduct, a defendant must prove that the prosecutor's conduct was improper and that it prejudiced his right to a fair trial. *State v. Carver*, 122 Wn. App. 300, 306, 93 P.3d 947 (2004) (citing *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432

(2003)). A defendant can establish prejudice only if there is a substantial likelihood that the misconduct affected the jury's verdict. *Carver*, 122 Wn. App. at 306 (quoting *Dhaliwal*, 150 Wn.2d at 578). We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *Carver*, 122 Wn. App. at 306 (citing *Dhaliwal*, 150 Wn.2d at 578). If defense counsel fails to object to the prosecutor's statements, then reversal is required only if the misconduct was so flagrant and ill intentioned that no instruction could have cured the resulting prejudice.[1] *State v. Belgarde*, 110 Wn.2d 504, 508, 755 P.2d 174 (1988).

## A. VOUCHING

■ ¶7 Jackson argues that the prosecutor committed misconduct by improperly vouching for the veracity of police officers' testimony. It is improper for a prosecutor to personally vouch for a witness's credibility. *See State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995), *cert. denied*, 516 U.S. 1121 (1996). "Prosecutors may, however, argue an inference from the evidence," and this court will not find prejudicial error "unless it is 'clear and unmistakable' that counsel is expressing a personal opinion." *Brett*, 126 Wn.2d at 175 (quoting *State v. Sargent*, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)).

■ ¶8 Here, it was a key jury question whether to believe the police officers, who testified that the events they witnessed led them to believe that Jackson drove the car, or

[1] We are aware that some interpret *State v. Warren*, 165 Wn.2d 17, 195 P.3d 940 (2008), *cert. denied*, 129 S. Ct. 2007 (2009), as abrogating the flagrant and ill-intentioned standard for reviewing alleged prosecutorial misconduct to which trial counsel did not object. *See State v. Dixon*, 150 Wn. App. 46, 57 n.4, 207 P.3d 459 (2009). We disagree with this interpretation, as the *Warren* court applied the flagrant and ill-intentioned standard, while the dissent would hold that objection was not required under the facts of that case because the trial court rendered any objections futile by overruling prior objections on the same ground. 165 Wn.2d at 27-30. Moreover, our Supreme Court applied the flagrant and ill-intentioned standard in a case issued after *Warren* without any indication that *Warren* affected the long-standing case law on this matter. *See State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

to believe Greene, who testified that she drove the car. The prosecutor's relevant closing argument follows:

> The first thing that I want to address regarding this evidence is credibility. It is one of the first instructions that the judge has provided you in your packet. It is your duty as members of the jury to determine the credibility of each witness. Some of the things that you['re] asked to consider are for example the quality of the witness's memory while testifying; the manner of the witness while testifying; any personal interests that the witness might have in the outcome or the issues; or any bias or prejudice that a witness might have.
>
> Let's think about that for just a moment. In the State's case you heard testimony from [four] law enforcement officers. These are officers, who have been trained, extensively, every single one of them had considerable experience.
>
> One of the things that they are trained to do is observe and to report those observations accurately. *Every single one of them did so* and every single one of them corroborated the other's testimony. There were not any inconsistencies there.

Report of Proceedings (RP) (Mar. 13, 2008) at 39-40 (emphasis added). The prosecutor then detailed the trial evidence and concluded:

> [O]nce again, when you go back into that jury room think about everything that you heard over the last day and a half, and think about what makes sense to you. Four officers all very accurate with the same testimony, all corroborate one another. Yes, only one of them actually saw the vehicle in motion. Does that make a difference though? No. Because *his testimony was accurate and true.*

RP (Mar. 13, 2008) at 48 (emphasis added).

¶9 In the argument above, the prosecutor did not vouch for the police officers' credibility. We look at the entire argument instead of, as Jackson suggests, viewing the highlighted snippets of argument out of context. *Carver*, 122 Wn. App. at 306 (citing *Dhaliwal*, 150 Wn.2d at 578). In context, the prosecutor reminded the jury that it is the sole judge of credibility. He then outlined which evidence (and

reasonable inferences from the evidence) could support the jury's conclusion that the officers were credible and Jackson's witness was not. This is not vouching. *See Brett*, 126 Wn.2d at 175. Moreover, the argument, to which Jackson did not object, is certainly not flagrant and ill-intentioned misconduct. *See Belgarde*, 110 Wn.2d at 508.

## B. BURDEN OF PROOF

¶10 Next, Jackson argues that the prosecutor impermissibly shifted the burden of proof to the defense. Specifically, he points to the prosecutor's arguments that (1) "there was not a single shred of testimony in this case to corroborate [Greene's] story" and (2) the jury should compare Jackson's evidence with the State's evidence. RP (Mar. 13, 2008) at 41. A prosecutor may commit misconduct if he mentions in closing argument that the defense did not present witnesses or explain the factual basis of the charges, or if he states that the jury should find the defendant guilty simply because he did not present evidence to support his defense theory. *State v. Fleming*, 83 Wn. App. 209, 215, 921 P.2d 1076 (1996), *review denied*, 131 Wn.2d 1018 (1997); *State v. Traweek*, 43 Wn. App. 99, 106-07, 715 P.2d 1148, *review denied*, 106 Wn.2d 1007 (1986), *overruled on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991).

¶11 Here, the prosecutor did not commit misconduct. Instead, he explained that the jury was the sole judge of credibility and outlined numerous reasons why it should find the State's witnesses more credible than Jackson's witness, Greene. He mentioned, for instance, that Greene was in a romantic relationship with Jackson, she admitted she was drinking alcohol on the night of the alleged crime, and the events to which she testified seemed very unusual and did not make sense. The prosecutor also mentioned that no evidence corroborated Greene's testimony, while four police officers corroborated each other's testimony. The mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of

proof to the defense. *See Fleming*, 83 Wn. App. at 215; *Traweek*, 43 Wn. App. at 106-07. The prosecutor in this case clearly explained to the jury that the State had the burden of proof. He did not imply that Jackson was required to provide evidence or that the jury should find Jackson guilty based on his decision to present only one defense witness.

¶12 Further, the prosecutor did not invite the jury to simply compare Jackson's evidence with the State's evidence. Instead, the prosecutor argued that the jury should compare evidence only to determine whether Greene was credible, not to determine whether the State met its burden of proof. The jury instructions permit such comparison for credibility purposes. They read:

> You are the sole judges of the credibility of each witness. . . . In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; *the reasonableness of the witness's statements in the context of all the other evidence*; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

Clerk's Papers (CP) at 42-43. Jackson does not challenge this jury instruction or argue why it should be impermissible for a jury to base credibility determinations on "the reasonableness of the witness's statements in the context of all the other evidence." CP at 43. He has not demonstrated prosecutorial misconduct on this basis.[2]

---

[2] Jackson asserts that the standard of review for this and the next alleged errors is the constitutional harmless error standard because criminal defendants have a constitutional right to the presumption of innocence and to have the government prove guilt beyond a reasonable doubt. *Traweek*, 43 Wn. App. at 107 (citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). The constitutional harmless error standard applies when a prosecutor's comment implicates a constitutional right other than the right to a fair trial. *State v. Lozano Moreno*, 132 Wn.

## C. Self-Incrimination

¶13 Next, Jackson argues that the prosecutor impermissibly commented on his privilege against self-incrimination by stating in closing argument that no evidence corroborated Greene's testimony (the statement discussed above) and that "no one has shown any evidence that [Jackson] was not intoxicated." RP (Mar. 13, 2008) at 47. We disagree.

¶14 While it is improper to imply that the defense has a duty to present evidence, a prosecutor may properly comment on the evidence. *State v. McKenzie*, 157 Wn.2d 44, 58-59, 134 P.3d 221 (2006). Further, a prosecutor may comment on the absence of certain evidence if persons other than the defendant could have testified regarding that evidence. *State v. Ashby*, 77 Wn.2d 33, 37-38, 459 P.2d 403 (1969).

¶15 Here, Jackson essentially argues that the State may not explain to the jury that there is no evidence to support or corroborate a particular matter. That is not the standard. *See Ashby*, 77 Wn.2d at 37-38. The prosecutor mentioned that no evidence corroborated Greene's testimony, but he focused on the fact that the police officers' testimony contradicted her story. This is not a comment on Jackson's silence.

¶16 The prosecutor also stated that "no one has shown any evidence that [Jackson] was not intoxicated." RP (Mar.

App. 663, 671-72, 132 P.3d 1137 (2006) (citing *State v. Contreras*, 57 Wn. App. 471, 473, 788 P.2d 1114, *review denied*, 115 Wn.2d 1014 (1990)). "Under this standard, the court must reverse unless convinced beyond a reasonable doubt that the evidence is so overwhelming that it necessarily leads to a finding of guilt." *Moreno*, 132 Wn. App. at 672 (citing *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996)). This standard applies even if the defendant failed to object at the trial court. *Moreno*, 132 Wn. App. at 672 (citing RAP 2.5(a)(3)).

We note that our Supreme Court applied the "flagrant misconduct" standard to an argument similar to Jackson's when, as here, the defendant did not object at trial. *See State v. Gregory*, 158 Wn.2d 759, 846, 147 P.3d 1201 (2006). The court did not, however, discuss the constitutional harmless error standard, and it is not clear whether appellate counsel raised the issue. *See Gregory*, 158 Wn.2d at 846. Because we conclude that no misconduct occurred, we do not resolve the issue of the correct prejudice standard. *Accord Warren*, 165 Wn.2d at 26 n.3 (similarly declining to reach this issue).

13, 2008) at 47. Greene could have testified about whether Jackson was intoxicated but did not. This is not a comment on Jackson's choice not to testify. *See Ashby*, 77 Wn.2d at 37-38.

¶17 Moreover, Jackson cannot demonstrate prejudice. The jury instructions clearly explain that the State "has the burden of proving each element of the crime beyond a reasonable doubt" and the defendant "has no burden to prove a reasonable doubt exists." CP at 46. And in closing, Jackson's attorney stated, "[O]kay, I think the prosecutor's probably right, I think there was enough evidence to conclude [Jackson] was probably drunk. I'm not arguing that. The question is whether he was driving or whether he was in physical control [of the car]." RP (Mar. 13, 2008) at 55. Jackson has not demonstrated prosecutorial misconduct or prejudice.

### D. Acquit Unless State's Witnesses Committed Perjury

¶18 Jackson next argues that the prosecutor committed misconduct by stating during rebuttal argument, "I would like you to ask yourself, what possible reason would Trooper Nelson have to lie or make something up that [Jackson] was driving that vehicle." RP (Mar. 13, 2008) at 59. "[I]t is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken." *Fleming*, 83 Wn. App. at 213 (citing *State v. Casteneda-Perez*, 61 Wn. App. 354, 362-63, 810 P.2d 74, *review denied*, 118 Wn.2d 1007 (1991)). Here, however, the prosecutor did not say that the jury could acquit Jackson only if it disbelieved the officers. He instead argued that the facts supported a conclusion that the State's witnesses were being truthful. This is not misconduct. *See State v. Fiallo-Lopez*, 78 Wn. App. 717, 731, 899 P.2d 1294 (1995).

### E. Expression of Personal Opinion

¶19 Jackson also alleges that the prosecutor committed misconduct by stating, "I think maybe [Greene]

might have ulterior motives."[3] RP (Mar. 13, 2008) at 41. Jackson did not object to this statement. And the prosecutor made this statement in the context of recounting evidence and reasonable inferences from the evidence that could support the jury's conclusion that Greene was not credible. As such, it is not flagrant and ill-intentioned misconduct that no jury instruction could cure. *See State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991) (holding that prosecutor's phrasing argument in terms of "I think" or "I think the evidence shows," to which trial counsel did not object, is not prosecutorial misconduct if the arguments are based on evidence or reasonable inferences).

¶20  We note, however, that it is highly problematic for prosecutors to phrase their closing arguments in terms of what they think. This is a common linguistic slip, but it is nonetheless improper in the context of a criminal trial. It is irrelevant what a prosecutor thinks about the evidence, and the jury is already aware, based on the very fact of a criminal prosecution, that the prosecutor believes that he or she had sufficient evidence to prevail. Although we find no reversible error in this case, prosecutors would best serve the criminal justice system by purging language expressing their personal thought process from the courtroom.

F. CUMULATIVE ERROR

¶21  Jackson further argues that cumulative errors in closing arguments entitle him to a new trial. The cumulative error doctrine applies when several trial errors occurred and none alone warrants reversal but the combined errors effectively denied the defendant a fair trial. *State v. Hodges*, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003), *review denied*, 151 Wn.2d 1031 (2004). Here, however, there are not multiple errors to accumulate regarding

---

[3] We note that Jackson did not raise this argument in his brief but addressed it at oral argument. We typically will not consider an argument raised for the first time during oral argument but, here, the State raised the issue in its response brief and thoroughly argued it. RAP 12.1; *State v. Johnson*, 119 Wn.2d 167, 170-71, 829 P.2d 1082 (1992). For this reason, we find it appropriate to address the issue on the merits under RAP 12.1(b).

the alleged prosecutorial misconduct. Accordingly, the doctrine does not apply.

## SENTENCING

¶22 Next, Jackson argues that we should remand for resentencing because (1) the State did not present evidence to prove six of his prior offenses, (2) no evidence supports the sentencing court's finding that he was on community custody when he committed this offense, and (3) the sentencing court erred because it did not find that his 2002 convictions for DUI and reckless driving were the same criminal conduct. The State conceded error on grounds one and two. We accept the State's concessions of error and remand for resentencing in which the State may present evidence to support these offender score points.

### A. PROOF OF CRIMINAL HISTORY

¶23 Jackson argues that the State failed to present evidence to support six of his prior offenses. Jackson's offender score includes three prior convictions for DUI and one prior conviction for physically controlling a motor vehicle while under the influence of intoxicants. The State presented judgments and sentences for these convictions, and Jackson stipulated that he was the person named on them.

¶24 Jackson argues that the State failed to present evidence on the other six convictions on his offender score, and the State conceded this error during oral argument. *See State v. Mendoza*, 165 Wn.2d 913, 205 P.3d 113 (2009) (defendant is entitled to resentencing if State relied solely on its presentence report, rather than admissible evidence, to prove criminal history). The publicly accessible Clallam County docket indicates that exhibit one, which includes judgments and sentences for these prior convictions, was

introduced on the same day as sentencing.[4] But the State concedes that it did not submit this exhibit until sentencing was complete and this evidence was, therefore, unavailable at sentencing for the court's consideration. As no evidence before the sentencing court supported these offender score points, we accept the State's concession and remand for resentencing.

## B. ON COMMUNITY CUSTODY AT TIME OF OFFENSE

¶25 Jackson also argues, and the State concedes, that no evidence supports the sentencing court's finding that he was on community custody when he committed the current offense. We accept the concession and also remand for resentencing on this issue.

¶26 A defendant may challenge an offender score calculation for the first time on appeal because the sentencing court acts without statutory authority when it imposes a sentence based on a miscalculated offender score. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002); *State v. McDougall*, 132 Wn. App. 609, 612, 132 P.3d 786 (2006). "Moreover, a sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice." *Goodwin*, 146 Wn.2d at 868 (citing *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 569, 933 P.2d 1019 (1997)). "We review a sentencing court's calculation of an offender score de novo." *State v. Bergstrom*, 162 Wn.2d 87, 92, 169 P.3d 816 (2007) (citing *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003)).

¶27 A sentencing court may add one point to an offender score if it finds by a preponderance of evidence that the defendant was under community custody when he committed the current offense. Former RCW 9.94A.525(19) (2007); *State v. Jones*, 159 Wn.2d 231, 239 n.7, 241, 149 P.3d 636 (2006), *cert. denied*, 549 U.S. 1354 (2007). Here, the

---

[4] *Available at* http://dw.courts.wa.gov/index.cfm?fa=home.superiorSearch&terms=accept&flashform=0 (Clallam Superior Court Case No. 08-1-00007-8) (last visited June 4, 2009).

State correctly concedes that no evidence supported this finding. Accordingly, we remand for resentencing.

### C. Same Criminal Conduct

¶28 Jackson further argues that the sentencing court erred when it declined to hold that his DUI and reckless driving convictions were the same criminal conduct under RCW 9.94A.525(5)(a)(i). He did not raise this issue at the sentencing court and has waived the right to appeal it. *In re Pers. Restraint of Shale*, 160 Wn.2d 489, 496, 158 P.3d 588 (2007) (holding that issue waived when the defendant "failed to ask the court to make a discretionary call of any factual dispute regarding the issue of 'same criminal conduct' and he did not contest the issue at the trial level").

### D. Remedy

¶29 The remaining concern is the proper remedy for these errors. Jackson did not object to these sentencing issues below, and our Supreme Court recently held that where "there is no objection at sentencing and the State consequently has not had an opportunity to put on its evidence, it is appropriate to allow additional evidence at [re]sentencing." *Mendoza*, 165 Wn.2d at 930 (citing *State v. Lopez*, 147 Wn.2d 515, 520-21, 55 P.3d 609 (2002)). The proper remedy, therefore, is to remand with a full opportunity for the State to prove that Jackson was on community custody when he committed the current offenses and that he committed the prior offenses listed in his offender score.

### Right to Jury Trial

¶30 Jackson next argues that the sentencing proceedings violated his right to a jury trial because the judge, rather than the jury, found that he had prior convictions for purposes of calculating his criminal history and offender score. Our Supreme Court held that there is no right to a jury trial for the fact of a prior conviction. *State v. Smith*, 150 Wn.2d 135, 156, 75 P.3d 934 (2003), *cert. denied*,

541 U.S. 909 (2004). We must follow that binding precedent. Jackson additionally argues that the fact of identity (i.e., whether he was the person who committed the offenses listed in his criminal history) is a matter for the jury. We rejected that contention in *State v. Lewis*, 141 Wn. App. 367, 393, 166 P.3d 786 (2007), *review denied*, 163 Wn.2d 1030 (2008). We follow that precedent and affirm the judge's finding of facts underlying Jackson's offender score and criminal history.

STATEMENT OF ADDITIONAL GROUNDS[5] ISSUES

¶31 Jackson presents two arguments in his statement of additional grounds. First, he argues that the trial court improperly calculated his offender score. Because he does not explain what type of miscalculation allegedly occurred, we cannot review this issue on the merits to the extent that his argument may differ from his appellate counsel's argument.

¶32 Second, Jackson argues that the trial court did not arraign him within the deadline set out in CrR 3.3. Subject to some exceptions, CrR 3.3(b)(1)(i) mandates that trial must begin within 60 days after the defendant is arraigned if he is detained in jail. Here, the trial court held an arraignment hearing on January 18, and trial began on March 12, well within the 60-day time frame. Before arraignment on this matter, Jackson was apparently incarcerated under a district court charge, but a defendant's incarceration on other charges does not impact the CrR 3.3 time for trial on the charge at issue in this appeal. CrR 3.3(e)(2) (proceedings on unrelated charges "shall be excluded in computing the time for trial"). This argument fails.

¶33 In conclusion, we vacate Jackson's sentence and remand for resentencing, at which time the court will recalculate his offender score and address the question of whether Jackson was on community custody when he committed the current offenses. As Jackson did not object

---

[5] RAP 10.10.

on these grounds below, the State has a full opportunity to present evidence to support its contentions at the resentencing hearing. We affirm on all other grounds.

HOUGHTON and HUNT, JJ., concur.

Review denied at 167 Wn.2d 1007 (2009).